# Illinois Official Reports

## Appellate Court

---

### *People v. Gonzalez-Carrera*, 2014 IL App (2d) 130968

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JESUS GONZALEZ-CARRERA, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0968 |
| Filed | September 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The grant of defendant's motion to suppress the controlled substances found in his vehicle following a stop for a taillight violation was affirmed and the denial of the State's motion to reopen the proofs was upheld, since the record showed that although defendant's left taillight had a two-inch hole that emitted white light when the taillights were illuminated, that condition did not constitute a traffic violation under section 12-201(b) of the Vehicle Code during the daylight hour when defendant was stopped, and the trial court did not abuse its discretion in denying the State's motion to reopen the proofs, especially when it was attempting to establish an entirely new basis for the traffic stop. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-CF-670; the Hon. George J. Bakalis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert B. Berlin, State's Attorney, of Wheaton (Lisa A. Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People.<br><br>James D. Tunick, of Chicago, for appellee. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
            Justices Zenoff and Hudson concurred in the judgment and opinion.


**OPINION**


¶ 1       The State appeals the judgment of the circuit court of Du Page County granting defendant Jesus Gonzalez-Carrera's motion to suppress evidence found in his vehicle pursuant to a traffic stop and denying the State's motion to reopen the proofs. Because the State failed to establish a valid basis for the traffic stop and because the trial court did not abuse its discretion in denying the motion to reopen the proofs, we affirm.


¶ 2                                    I. BACKGROUND

¶ 3       Defendant was indicted on one count of unlawful possession with intent to deliver 900 grams or more of a controlled substance (cocaine) (720 ILCS 570/401(a)(2)(D) (West 2012)) and one count of possession with intent to deliver 400 grams or more but less than 900 grams of a controlled substance (methamphetamine) (720 ILCS 646/55(a)(1), (a)(2)(E) (West 2012)). He was also charged by traffic citation with violating section 12-201(b) of the Illinois Vehicle Code (Vehicle Code) by "driving with one red tail light" (625 ILCS 5/12-201(b) (West 2012)).

¶ 4       Defendant moved to suppress evidence found in his vehicle, contending that the arresting officer lacked probable cause to stop his vehicle for a traffic violation. On July 26, 2013, the trial court conducted an evidentiary hearing. At the hearing, Deputy Bata of the Du Page County sheriff's office testified that on March 27, 2013, at around 3:40 p.m., he observed defendant's pickup truck traveling east on Army Trail Road. Deputy Bata was driving east in the adjacent lane and was "slightly behind and to the left of [defendant's vehicle]."

¶ 5       When defendant activated his brake lights a "white light emitted from the [left] rear taillight." Deputy Bata described the taillight as having a "hole" the size of a "couple inches" in the red plastic covering, allowing white light to be visible. The taillight emitted both red and white light when the brakes were activated. He estimated that he was about 10 feet from the rear of defendant's vehicle when he observed the taillight emit both red and white light.

¶ 6       On that basis, Deputy Bata stopped defendant. He issued defendant a traffic citation for a violation of section 12-201(b) of the Vehicle Code. The citation indicated, among other things, that it was daytime, that the roadway was dry, and that the visibility was clear. None of the boxes that indicated rain, fog, or snow were marked. No other witnesses testified at the hearing.

¶ 7       In ruling on the motion to suppress, the trial court referred to section 12-201(b)'s requirement that a vehicle must have two taillights that emit red light that is visible for at least 500 feet. Thus, the court ruled that the dispositive issue was whether there was any evidence that either of the taillights on defendant's vehicle did not emit a red light that was

visible for at least 500 feet. The court found that, because there was "no evidence that [those] lights failed to throw a red light visible for at least 500 feet," there was no violation of section 12-201(b). Therefore, because the stated basis for the traffic stop was invalid, the court granted the motion to suppress.

¶ 8 On August 19, 2013, the State filed a motion to reopen the proofs. The State asserted in its motion that, approximately 20 minutes before Deputy Bata made the traffic stop, defendant had received approximately four kilograms of cocaine and one pound of methamphetamine as part of a controlled delivery. After the delivery, he left in his pickup truck. The State claimed that defendant's involvement in the controlled delivery provided an alternative basis for the traffic stop.

¶ 9 At the hearing on the motion to reopen the proofs, the State asserted that, after it notified an investigator in the sheriff's office that the motion to suppress had been granted, it was informed by a supervisor from Homeland Security that at the time of the traffic stop they had been investigating defendant for drug trafficking. According to the State, it had no idea that such an investigation existed, Deputy Bata never mentioned such an investigation, and it never thought to ask Deputy Bata about such an investigation. When asked by the court if Deputy Bata was aware of the investigation, the State responded that it did not know. According to the State, it had not been able to reach Deputy Bata because it did not have his cell phone number.

¶ 10 In denying the motion to reopen the proofs, the trial court found that, based on the State's assertions, there was no indication that Deputy Bata knew about the drug investigation at the time of the traffic stop and there was no basis to impute the knowledge of the Homeland Security investigators to Deputy Bata. When the State asked if it could have time to contact Deputy Bata, the court responded that, even if Deputy Bata came in a week later and testified that he knew about the drug investigation when he stopped defendant, it would not change its ruling. The court explained that, if the State had not yet discovered what Deputy Bata knew, it was "not going to keep doing this."

¶ 11 On September 6, 2013, the State filed a motion to reconsider the denial of the motion to reopen the proofs. In support of the motion to reconsider, it asserted that it had learned that Deputy Bata knew about the drug investigation and the controlled delivery before he made the traffic stop. The trial court responded that it found it "almost impossible to understand" why Deputy Bata did not reveal that knowledge to the State when he was being prepped for the hearing on the motion to suppress or to the court when he was asked under oath what the basis was for the stop. When the State suggested that Deputy Bata did not do so because he had been instructed by Homeland Security not to reveal the investigation, the court responded that Deputy Bata had "an obligation" to do so and that he could not "get up under oath and basically lie *** that he had no other basis to stop the vehicle." Thus, the court denied the motion to reconsider. The State then filed this timely appeal.[1]

---

[1]Defendant contends that the notice of appeal was untimely, because the motion to reopen the proofs and the motion to reconsider did not extend the time to appeal. Defendant previously filed an emergency motion to dismiss the appeal raising the same argument, and we denied that motion. We stand by that ruling.

¶ 12                                    II. ANALYSIS

¶ 13        On appeal, the State contends that there was a violation of section 12-201(b) of the Vehicle Code, which was a valid basis for the traffic stop. Alternatively, the State posits that it could have established a valid alternative basis for the stop had the trial court not abused its discretion in denying the motion to reopen the proofs.


¶ 14                                  A. Motion to Suppress

¶ 15        On review of a ruling on a motion to suppress, the trial court's factual findings are reviewed for clear error, giving due weight to any inferences drawn from the facts, and reversal is warranted only when those findings are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. However, a reviewing court remains free to assess the facts in relation to the issues and draw its own conclusions when deciding what relief should be granted. *Id.* A trial court's decision as to whether the motion to suppress should be granted is a legal one that is subject to *de novo* review. *Id*. We may affirm the decision on any basis in the record. *People v. Keys*, 375 Ill. App. 3d 459, 461 (2007).

¶ 16        Vehicle stops must be reasonable under the fourth amendment. *Hackett*, 2012 IL 111781, ¶ 20. Generally, the stop of a vehicle is reasonable if the police have probable cause to believe that a traffic violation has occurred. *Id.* However, the less exacting standard of reasonable, articulable suspicion that justifies an investigatory stop also will suffice to stop a vehicle in certain circumstances. *Id.* Therefore, depending on the situation, an officer's degree of suspicion need not rise to the level of probable cause to justify a traffic stop. *Id.* The difference in the two standards might or might not be relevant, depending on the particular facts of the case and the specific traffic violation at issue. *Id.* For example, where the basis for the traffic stop is a violation of a provision of the Vehicle Code that requires proof of additional facts not ascertainable without stopping the vehicle, then reasonable suspicion that the provision has been violated would be sufficient to justify the stop. *Id.* ¶¶ 27-28 (holding that a violation of section 11-709(a) (625 ILCS 5/11-709(a) (West 2008)), which requires proof that the defendant deviated from his lane of travel without the road conditions causing him to do so, might require further investigation by the officer after the stop to determine the reason for the lane deviation).

¶ 17        In our case, according to Deputy Bata's testimony at the hearing, the basis for the traffic stop was a violation of section 12-201(b) of the Vehicle Code. That section provides, in relevant part, that all motor vehicles other than motorcycles must have at least two headlights, which must be illuminated "from sunset to sunrise, at times when rain, snow, fog, or other atmospheric conditions require the use of windshield wipers, and at any other times when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1000 feet." 625 ILCS 5/12-201(b) (West 2012). Section 12-201(b) also requires all motor vehicles other than motorcycles to "exhibit at least 2 lighted lamps, commonly known as tail lamps, which shall be mounted on the left rear and right rear of the vehicle so as to throw a red light visible for at least 500 feet in the reverse direction." *Id.* Pursuant to section 12-201(c), a vehicle's taillights must be illuminated whenever the headlights are on. 625 ILCS 5/12-201(c) (West 2012).

¶ 18        Although the parties and the trial court focused on whether defendant's lights satisfied section 12-201(b), that provision did not apply under the facts that existed at the time of the stop. According to Deputy Bata, he stopped defendant's vehicle at around 3:40 p.m. on

March 27, 2013. That is, the stop did not occur between sunset and sunrise.[2] Nor was there any evidence that any of the other conditions under section 12-201(b) existed. To the contrary, the traffic citation indicated that it was daytime, that the road was dry, and that visibility was clear. The indicators on the citation for rain, snow, and fog were not marked. Nor was there any other evidence that visibility was limited at the time of the stop. Therefore, because there was no showing that any of the conditions that required the use of two red taillights under section 12-201(b) existed at the time of the stop, there could have been no violation of that provision, regardless of whether the left taillight emitted a white light. Although the trial court correctly found that the State did not provide any evidence that defendant's taillights violated section 12-201(b), we need not even reach this question in light of the fact that there was no showing that the section required the use of taillights at all. Thus, the State failed to establish that Deputy Bata had either reasonable suspicion or probable cause that section 12-201(b) was being violated when he stopped defendant's vehicle.[3]

¶ 19    Although our analysis differs somewhat from that of the trial court, we may affirm its judgment on any basis in the record. See *Keys*, 375 Ill. App. 3d at 461. Because the record does not reflect a valid basis for the traffic stop, the motion to suppress the evidence was properly granted.

¶ 20                      B. Motion to Reopen the Proofs

¶ 21    We turn next to the issue of whether the trial court properly denied the State's motion to reopen the proofs. Generally, a court has the authority to allow a litigant to reopen its case under appropriate circumstances. *People v. Hopson*, 2012 IL App (2d) 110471, ¶ 19. Even after the State has rested its case, the court has discretion to allow it to put on more evidence. *Id.* The exercise of that discretion will not be reversed without a clear showing of abuse. *Id.* Factors to consider in this analysis include: (1) whether the failure to introduce the evidence was inadvertent; (2) any surprise or unfair prejudice to the other party; (3) the importance of the new evidence; and (4) whether there were cogent reasons that justified denying the motion to reopen. *Id.* A motion to reopen may be granted even after the court has ruled on a motion to suppress. See, *e.g.*, *id.*; *People v. Ward*, 326 Ill. App. 3d 897 (2002). However, when a party does not seek to reopen the proofs until after the court's ruling, the court is within its discretion to deny the motion. See *People v. Beverly*, 364 Ill. App. 3d 361, 368 (2006) ("The State was not entitled to a postruling opportunity to cure court-identified flaws in its case.").

¶ 22    In this case, well after the trial court had already ruled on the motion to suppress, the State sought to reopen the proofs so that it could establish an entirely different basis for the traffic stop than the basis it initially had asserted. This type of posthearing switcheroo is not an appropriate use of a motion to reopen proofs. In the cases cited by the State, the evidence

[2]On March 27, 2013, in the Chicago area, the United States Naval Observatory official sunrise was 6:42 a.m., and official sunset was 7:11 p.m. http://aa.usno.navy.mil/data/docs/ RS_OneYear.php (Form A) (last visited July 28, 2014).

[3]Because we have held that section 12-201(b) was not applicable under the facts of this case, we need not decide whether *People v. Girot*, 2013 IL App (3d) 110936, was correctly decided.

- 5 -

that was the subject of the motion to reopen proofs was relevant to the theory previously argued at the hearing. See, *e.g.*, *Ward*, 326 Ill. App. 3d at 900 (evidence regarding the reliability of the informant); *People v. Benoit*, 240 Ill. App. 3d 185, 189 (1992) (evidence regarding whether defendant invoked right to counsel); see also *Hopson*, 2012 IL App (2d) 110471, ¶ 19 (evidence regarding police officer's ability to recognize marijuana). The State cites no authority, and we are not aware of any, that would allow it, after unsuccessfully responding on one basis to a motion to suppress, to come into court and attempt to establish an entirely different justification for the seizure. It is one thing to allow a party, under limited circumstances, to introduce evidence to support its original theory or claim because it inadvertently failed to do so. It is an entirely different matter to give a losing litigant a second bite at the apple by allowing it to argue an alternative basis for relief after it lost on its original basis. *Cf. Barth v. Kantowski*, 409 Ill. App. 3d 420, 426 (2011) (a party may not raise a new legal argument in a motion to reconsider). That is well beyond the relief contemplated by a motion to reopen proofs.[4]

¶ 23    Moreover, even if a motion to reopen the proofs were available under the circumstances of this case, the trial court did not abuse its discretion in light of the relevant factors. First, there was no inadvertence on the part of the State. It did not mistakenly fail to introduce evidence that it intended to introduce at the hearing. Rather, it was apparently oblivious to the existence of the evidence regarding the drug investigation and the controlled delivery. Second, defendant certainly would have been surprised by evidence relating to a basis for the stop that was entirely new and not apparent from the facts of the case as indicated in discovery, reflected by the State's original theory, or developed at the hearing. Finally, though the new evidence was important to the State's case (given that it had lost on its prior theory), there were cogent reasons for denying the motion to reopen the proofs. The most important was that the State had not asserted whether Deputy Bata knew of the purported drug investigation or controlled buy when he stopped defendant's vehicle or whether there was any basis to impute the knowledge of the Homeland Security investigators to Deputy Bata. Moreover, it was apparent to the court that, if what the State asserted was true, Deputy Bata had been less than truthful when he testified that his basis for the stop was the traffic violation. Under the circumstances as presented to the court, and in light of the four factors, it was not a clear abuse of discretion to deny the motion to reopen the proofs.

¶ 24    Finally, we recognize that the State filed a motion to reconsider the denial of the motion to reopen the proofs. In doing so, it asserted that it had learned since the denial of the motion to reopen the proofs that Deputy Bata had in fact known about the drug investigation and controlled buy before he stopped defendant's vehicle.

¶ 25    A ruling on a motion to reconsider based on new matters not previously presented is reviewed for abuse of discretion. *People v. Pollitt*, 2011 IL App (2d) 091247, ¶ 18. Here, there was no abuse of discretion in denying the motion to reconsider, because, as we have already explained, there was no proper basis for a motion to reopen the proofs. That is so regardless of whether the State could show that there was a different basis for the traffic stop.

_____

    [4]It would also open the door to sandbagging. "Sandbagging" is a concealing or misrepresenting of one's true position or intent in order to take advantage of an opponent. Merriam Webster's Collegiate Dictionary 1032 (10th ed. 2001). We do not suggest that the State attempted to sandbag defendant in this case.

Moreover, as the trial court properly noted, the State failed to show why it could not have ascertained the extent of Deputy Bata's knowledge before it presented the motion to reopen the proofs. The court did not abuse its discretion in putting an end to the State's piecemeal approach.

¶ 26 As a final note, we are compelled to make the following observation. Honesty and candor between law enforcement officers and prosecutors is essential to the fair administration of justice. If an ongoing investigation is in jeopardy of being derailed because of an ongoing prosecution, there are legal options available to postpone the disclosure, so long as the defendant's rights are not compromised. In short, lying under oath is never an option.

¶ 27                                     III. CONCLUSION
¶ 28        For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 29        Affirmed.